## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

**MARCIA SHELTON,**

       **Plaintiff,**

  **vs.**                             **Civil Action File No.**

**McDONALD OIL COMPANY and**   **Jury Trial Demanded**
**CHARLES ASHLEY,**

       **Defendants.**

## <u>COMPLAINT</u>

Plaintiff Marcia Shelton ("Shelton") brings this Complaint against Defendants McDonald Oil Company ("McDonald") and Charles Ashley ("Ashley") and shows the Court as follows:

## INTRODUCTION

### 1.

Shelton brings this action under the Fair Labor Standards Act of 1938 (as amended) (29 U.S.C. § 201 *et seq*.), ("the FLSA") to recover due but unpaid overtime compensation and an additional like amount as liquidated damages and to be reimbursed her costs of litigation, including her reasonable attorney's fees.

## JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because McDonald Oil Company is located in this judicial district and a substantial portion of the events giving rise to the claims herein occurred in this judicial district.

## THE PARTIES

4.

Shelton resides in LaGrange, Troup County, Georgia.

5.

McDonald Oil Company is a corporation organized under the laws of the State of Georgia.

6.

McDonald can be served with process via its registered agent, Scott A. Gordy at 1700 Lukken Industrial Drive West, LaGrange, Georgia.

7.

Ashley is a resident of Muscogee County, Georgia.

8.

Ashley can be served with process at his residence, located at 2826 Roswell Lane, Columbus, Georgia.

## FACTUAL ALLEGATIONS

9.

At all times material hereto, Defendants have owned and operated McDonald, an operator of retail fuel and convenience outlets operating in and around LaGrange, Georgia.

10.

Since May 2013, Ashley has been a District Manager for McDonald.

11.

In January 2012, Defendants hired Shelton as convenience store manager.

12.

From April 2012 through February 2014, Defendants employed Shelton as a
convenience store manager.

13.

From May 2014 through January 30, 2015, Defendants employed Shelton as a
convenience store manager.

14.

At all times material hereto, McDonald has been an "employer" of as defined in
FLSA § 3(d), 29 U.S.C. § 203(d).

15.

Since May 2013, Ashley has exercised operational control over the work
activities of Shelton.

16.

Since May 2013, McDonald designated Ashley as Shelton's supervisor.

17.

Since May 2013, Ashley was Shelton's supervisor.

18.

Since May 2013, Ashley was an "employer" of Shelton as defined in FLSA
§ 3(d), 29 U.S.C. § 203(d).

19.

At all times material hereto, McDonald was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

20.

During 2012, McDonald had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

21.

During 2013, McDonald had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

22.

During 2014, McDonald had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

23.

During 2015, McDonald had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

24.

At all times material hereto, two or more employees of McDonald, including Shelton, used or handled items that that had moved in interstate commerce and

were necessary for McDonald to perform its commercial purpose, including gasoline, cash registers, beer, soft drinks and food products.

25.

During 2012, McDonald had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

26.

During 2013, McDonald had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

27.

During 2014, McDonald had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

28.

During 2015, McDonald had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

29.

During 2012, McDonald had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

During 2013, McDonald had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

31.

During 2014, McDonald had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

32.

During 2015, McDonald had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

33.

At all times material hereto, McDonald was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

34.

McDonald is subject to the personal jurisdiction of this Court.

35.

At all times material hereto, Ashley has been an "employee" of Shelton as defined in FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

36.

At all times material hereto, Defendants did not vest Shelton with the authority to formulate, interpret or implement management policies or operating practices.

37.

At all times material hereto, Shelton did not carry out major business assignments in conducting the operations of the business.

38.

At all times material hereto, Shelton did not perform work that affected McDonald's business operations to a substantial degree.

39.

At all times material hereto, McDonald did not vest Shelton with the authority to commit it matters that have significant financial impact.

40.

At all times material hereto, McDonald did not vest Shelton with the authority to waive or deviate from established policies and procedures without prior approval.

41.

At all times material hereto, McDonald did not vest Shelton with the authority to negotiate and bind McDonald on significant matters.

42.

At all times material hereto, Shelton was not involved in planning McDonald's long- or short-term business objectives.

43.

At all times material hereto, Defendants required Shelton to work each Monday through Friday from 7:00 a.m. to 4:00 p.m. and each Saturday from 9:00 a.m. to 12:00 p.m., a weekly schedule comprised of 43 hours on duty.

44.

In addition, at all times material hereto Defendants required Shelton to regularly

drive around the LaGrange area to observe and report competing gas prices.

45.

Defendants required Shelton to perform such reviews multiple times a day,

seven days a week.

46.

Defendants required Shelton to perform such reviews before her shift began

each day from Monday through Friday and twice each day during such shifts.

47.

Defendants required Shelton to perform such reviews before 9:00 a.m. on

Saturdays and Sundays.

48.

Beginning in January 2015, Defendants utilized hourly-paid minimum wage

employees (*i.e.,* cashiers) to observe and report competing fuel prices on Saturdays

and Sundays.

49.

From April 2012 through November 2013, McDonald compensated Shelton

through payment of a salary of $515.00 per week.

50.

From approximately December 2013 through January 30, 2015, McDonald compensated Shelton through payment of a salary of $540.00 per week.

51.

At all times material hereto, Shelton was not able to take a meal break nor had other time free of duty during her scheduled working hours.

52.

Shelton served as the sole employee working in the convenience store to which she was assigned from 7:00 a.m. to 11:00 a.m. on each week day that she worked for McDonald.

53.

As the sole store employee from 7:00 to 11:00 a.m., Shelton's primary duty was to conduct customer transactions at the store's cash register during that time.

54.

At all times material hereto, Defendants utilized a cashier to conduct customer transactions at the store cash register from 11:00 a.m. to 4:00 p.m.

55.

At all times material hereto, Shelton spent a majority of the time between 11:00 a.m. and 4:00 p.m. stocking shelves, cleaning the public area of the store, cleaning

the restrooms, washing windows, making coffee, draining and refilling an ice chest, cleaning the parking lot and providing relief for the cashier.

56.

At all times material hereto, Shelton was required to work in place of cashiers when those employees were unavailable to work their scheduled shift.

57.

At all times material hereto, Shelton worked the shifts of cashiers at least twice a month, and often more frequently.

58.

In January and February 2013, for example, Shelton worked more than 70 hours on two consecutive weeks due to the need to work in place of cashiers.

59.

In January and February 2014, for example, Shelton worked more than 70 hours on two consecutive weeks due to the need to work in place of cashiers.

60.

Defendants did not provide Shelton with additional compensation when she worked a shift in place of a cashier.

61.

As a result, Shelton's effective hourly rate (i.e., her weekly salary divided by the number of hours worked) was often times comparable to, if not below, McDonald's cashiers.

62.

At all times material hereto, Shelton's primary duty was the performance of non-exempt duties.

63.

Since May 2012, Defendants did not vest Shelton with the authority to hire or to make recommendations that were given particular weight with regard to hiring.

64.

At all times material hereto, Shelton was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

65.

At all times material hereto, Defendants did not employ Shelton in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

66.

At all times material hereto, Defendants did not employ Shelton in a bona fide executive capacity within the meaning of 29 USC § 213 (a).\

67.

At all times material hereto, Defendants did not employ Shelton in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

68.

At all times material hereto, Shelton was not employed in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

## COUNT I - FAILURE TO PAY OVERTIME

69.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

70.

At all times material hereto, Defendants classified Shelton as exempt from the maximum hours provisions of the FLSA.

71.

At all times material hereto, Defendants wrongfully misclassified Shelton as exempt from the maximum hours provisions of the FLSA.

14

72.

At all times material hereto, Shelton has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

73.

During her employment with McDonald, Shelton regularly worked in excess of forty (40) hours per week.

74.

Defendants failed to pay Shelton at one and one half times her regular rate for work in excess of forty (40) hours during any workweek during her employment at McDonald.

75.

Defendants willfully failed to pay Shelton at one and one half times her regular rate for work in excess of forty (40) hours during any workweek during her employment at McDonald.

76.

Shelton is entitled to payment of due but unpaid overtime compensation in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

77.

As a result of the underpayment of overtime compensation as alleged above, Shelton is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

78.

As a result of the underpayment of overtime compensation as alleged above, Shelton is entitled to reimbursement of her costs of litigation, including her reasonable attorneys' fees.

**WHEREFORE,** Plaintiff respectfully prays:

1.  That Plaintiff's claims be tried before a jury;

2.  That Plaintiff be awarded an amount to be determined at trial against Defendants, jointly and severally, in unpaid overtime compensation due under the FLSA, plus an additional like amount in liquidated damages due, plus prejudgment interest thereon;

3.  That Plaintiff be awarded her costs of litigation, including her reasonable attorneys' fees and costs from Defendants; and

4.  For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DELONG CALDWELL BRIDGERS
& FITZPATRICK, LLC

*/s/ Kevin D. Fitzpatrick, Jr.*
Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375

3100 Centennial Tower
101 Marietta Street            */s/ Charles R. Bridgers*
Atlanta, GA 30303             Charles R. Bridgers
Telephone: (404) 979-3171      Georgia Bar No. 080791
Facsimile: (404) 835-6168
kevin.fitzpatrick@dcbflegal.com   */s/ Matthew W. Herrington*
charlesbridgers@dcbflegal.com    Matthew W. Herrington
matthew.herrington@dcbflegal.com  Georgia Bar No. 275411

COUNSEL FOR PLAINTIFF